**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

*Attorneys for Defendant*
  *Vince Luis Hocog Cruz*

**FILED**
DISTRICT COURT OF GUAM

OCT 10 2007

**JEANNE G. QUINATA**
**Clerk of Court**

IN THE DISTRICT COURT OF GUAM

----------

| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. 04-00053-001 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTION TO** |
| vs. | ) | **SUPPRESS EVIDENCE;** |
| | ) | **CERTIFICATE OF SERVICE** |
| VINCE LUIS HOCOG CRUZ | ) | |
| | ) | |
| Defendant. | ) | |

----------

## I.

## <u>MOTION</u>

Defendant VINCE LUIS HOCOG CRUZ ("CRUZ") moves the Court for a an order suppressing evidence from Defendant's residence on January 29, 2003, as the search of the residence was made without a warrant and without consent.

///

///

**ORIGINAL**

## II.

## STATEMENT OF FACTS

On January 29, 2003, at approximately 9:55 p.m. Guam Parole Officers Donna Cruz, Charfauros, Martinez and Gray conducted a spot check at the residence of parolee Defendant Cruz located at B-31 Sunset Villa Condo, Tamuning, Guam. The U.S. Department of Justice DEA form states that the Parole Officers conducted a search of Cruz's residence as per his conditions of release. *See* Exhibit A attached hereto and incorporated herein by reference. The officers entered the residence and walked straight into the bedroom. While in the bedroom, officers noticed a brown bag situated on top of a VCR. A search of the bag resulted with the discovery of packaging material. Officers continued the search and located a substantial amount of U.S. currency inside a vanity drawer. At that time, Defendant was handcuffed and instructed to be seated on the bed. Defendant was removed from the residence while the officers finished their search. The remainder of the search yielded a glass "ice" pipe and a zip lock bag partially filled with a crystalline substance. During the search, Millie Santos, Defendant's wife, arrived at the residence. At no time did Defendant give consent to search his residence. Despite the officers' contentions, Ms. Santos denies giving consent either.

## III.

## MEMORANDUM

**A. DEFENDANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE PAROLE OFFICERS PERFORMED A WARRANTLESS SEARCH OF HIS RESIDENCE**

The Fourth Amended restrains the government from performing "unreasonable searches and seizures. *U.S. Const. amend IV.* Warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that

the warrantless search is objectively reasonable under the Fourth Amendment. *People v. Cundiff*, 2006 Guam 12, citing; *Mincey v. Arizona*, 437 U.S. 385, 393-394 (1978).

"In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies."*People v. Chargualaf*, 2001 Guam 1 . "The general rule that warrantless searches are presumptively unreasonable, however, is subject to certain well established exceptions...."*People v. Camacho*, 2004 Guam 6. Exceptions include voluntary consent to the search, *People v. Santos*, 1999 Guam 1, as well as police officers' good faith reliance on a defective search warrant and the plain view doctrine. Camacho supra at 16.

In the *instant* case, the Parole Officers state that they conducted their search of Defendant's residence as per his conditions of release. *See* Exhibit A. The Statement of the Conditions under which Parole was granted that was provided to Defendant upon his release does not require that his residence to be subjected to being searched. *See* Exhibit B. Further, the Guam statute specifying conditions of parole does not contain this requirement either. Specifically, 9 GCA § 80.80 provides in relevant part:

    a.    If a prisoner is released on parole, the board shall require as a condition of his parole that he refrain from engaging in criminal conduct. The board may also require, as a condition of parole, either at the time of his release on parole or at the time and from time to time while he remains under parole, that he:

    (4)    report, as directed, upon his release to his parole officer at such regular intervals as may be required, answer all reasonable inquires by the parole officer, and permit the officer to visit him at reasonable times at his home or elsewhere.

    b.    Before release on parole, a parolee shall be provided with a certificate of parole setting forth the conditions of his parole, and shall sign a statement agreeing to such conditions.

///

///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

Case 1:04-cr-00053 Document 11 Filed 10/10/2007 Page 3 of 11

Again, § 80.80 does not state that a parolee's residence is subject to search. The only requirement is that the officer is permitted to visit the parolee at reasonable times at his home or elsewhere. Consequently, no warrantless search of Defendant's residence was ever authorized.

Generally, a nonconsensual search violates the Fourth Amendment unless it is conducted pursuant to a validly issued warrant supported by probable cause. ***Camara v. Municipal Court***, 387 U.S. 523, 528 (1967). When a Fourth Amendment intrusion serves special government needs beyond those of normal law enforcement, however, a warrant may not be required. ***National Treasury Employees Union v. Von Raab***, 489 U.S. 656, 665, (1989). The Supreme Court has concluded that probation searches fall within this category. ***Griffin v. Wisconsin***, 483 U.S. 868, 878, 107 S.Ct. 3164, 3170, 97 L.Ed.2d 709 (1987). In ***Griffin***, the Supreme Court concluded that a warrantless probation search did not violate the fourth amendment because it was conducted pursuant to a Wisconsin law authorizing such searches when supervisory approval was first obtained and reasonable grounds existed to believe contraband would be found. The Court held that the need for flexibility within the probation system and the special relationship existing between a probationer and his probation officer justified departing from the usual warrant requirement. ***Id.*** at 876. The Court specifically declined, however, to consider the state's argument that "any search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present." ***Id.*** at 880." ***Griffin*** stands for the proposition that reasonableness for probationary searches may be established by statute, rather than by warrant." ***United States v. Schoenrock***, 868 F.2d 289, 292 (8th Cir.1989). A number of other circuits have held that "reasonableness" can also be established by narrowly tailored restrictions included within a probation agreement. ***United States v. Giannetta***, 909 F.2d 571, 575 (1st Cir.1990); ***Schoenrock***, 868 F.2d at 292-93.

In *United States v. Wryn*, 952 F.2d 1122 (9th Cir. 1991), the defendant, who was on probation, was subjected to a search of his residence. The defendant moved for suppression of the evidence on the basis that it was obtained without a warrant and without consent. The government argued that the search was constitutional because the defendant was on probation and his probation officer had a reasonable belief that he was violating the terms of his probation. *Id.* at 1124. The Ninth Circuit found that although the defendant was on probation, there was no court order that the defendant subject himself to such searches as a condition of his probation and the state law on the issue required the sentencing court to order that condition specifically of one was to be imposed. *Id.* at 1125.

In the *instant* matter, this condition was not specifically imposed upon Defendant by the terms and conditions of his parole. Further, there is no statute or law in Guam requiring a parolee to subject his residence to a warrantless search. In relying on both *Griffin* and *Wynn*, the search conducted by the parole officers violated Defendant's Fourth Amendment right protecting him against unreasonable searches and seizures. The officers entered his residence, walked straight into the bedroom, searched inside a bag and searched through the drawers *without* any justification or legal authority. As such, all evidence unlawfully seized should be suppressed as evidence.

///
///
///
///
///
///
///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

## B. ALL EVIDENCE FOUND DURING THE ILLEGAL SEARCH MUST BE SUPPRESSED

If initial entry into a house violates a Defendant's Fourth Amendment rights, any evidence found in the ensuing warrantless search is "fruit of the poison tree." ***Wong Sun v. United States***, (1963) 371 U.S. 471, ***People v. Hernandez***, (1988) 199 Cal.App.3d 1182, 1187. It is clear that the Parole Officers search of Defendant's residence was unlawful and not authorized. Their entry into the residence violated Defendant's constitutional rights and all evidence found during the unlawful search must be suppressed.

RESPECTFULLY SUBMITTED this 10^h day of October, 2007.

**TEKER TORRES & TEKER, P.C.**

By _____
SAMUEL S. TEKER, ESQ., Attorneys for
Defendant, ***Vince Luis Hocog Cruz***

# CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury according to the laws of the United States, that on this date I caused to be served, via hand delivery, filed-stamped copies of this document entitled *Defendant's Motion to Suppress Evidence; Certificate of Service*, on the following:

>Office of the United States Attorney
>108 Hernan Cortez Avenue, Suite 500
>Hagåtña, Guam 96910

DATED at Hagåtña, Guam, on October 10, 2007.

_____
SAMUEL S. TEKER

KR:SST:cs
PLDGS:CRUZ, VINCE L.H.-USA vs.:002

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

-7-

# EXHIBIT "A"

## I. ARREST (Complete for all Arrest Submissions) Agents Manual 6641

| 47. Type of Arrest | 48. Date of Arrest | 49. PLACE OF ARREST ||| 
|---|---|---|---|---|
| ☐ Probable Cause<br>☐ Warrant<br>☐ Fugitive | | a. City | b. County | c. State or Country |

| 50. Armed at Arrest | 51. If Armed (Enter Number of Weapons by Type) |||||| 52. Type of Violation Charged? (Possession, Sale, Conspiracy, etc.) |
|---|---|---|---|---|---|---|---|
| | TYPE | Handgun | Shotgun | Rifle | Lethal Cutting Instrument | Other Weapon | |
| ☐ Yes | Semi-Auto | | | | | | |
| ☐ No | Full Auto | | | | | | 53. Major Drug Charged? (Heroin, Cocaine, etc.) |
| | Other | | | | | | |

## III. FUGITIVE DECLARATION (Complete if Defendant Not Arrested within 48 hours of the Issuance of the Arrest Warrant.)

| 54. Type of Declaration | 55. Apprehension Responsibility | 56. NCIC Number | 57. USMS Office Holding Warrant (City & State) |
|---|---|---|---|
| ☐ Original DEA Arrest Warrant<br>☐ Post Arraignment (Failure to Appear; Bond Default) | ☐ DEA<br>☐ USMS (Date Delegated): | 58. Court Docket Number | 59. Name of Judge or Magistrate |

| 60. Date & Judicial District of Issue | 61. DEA Agent Contact (Name and Phone Number with Area Code) |||
|---|---|---|---|
| 62 Type of Violation Charged (possession, sale, etc.) | 63. U.S. Code (Title & Section) | 64. Armed at Arrest ☐ Yes ☐ No | 65. Should be considered armed & dangerous ☐ Yes ☐ No |

66. Basis for Other Caution (state basis)

67. REMARKS

On January 29, 2002, Superior Court of Guam Parole Officers conducted a spot check at B-31 Sunset Villa Condos, Tamuning, Guam, the residence of Vince Luis H. CRUZ. Previously, Parole Officers received information that CRUZ may have violated his release conditions.

Parole Officers met with CRUZ and, as per his conditions of release, conducted a search of his residence. The search yielded drug paraphernalia, packaging material, in excess of thirty five grams of suspected crystal methamphetamine and $9,023.00 in U.S. Currency. CRUZ did not make a statement. Parole Officers found CRUZ to be in violation of his release conditions and he was subsequently confined at the Guam Detention Facility, Hagatna, Guam.

Federal prosecution is anticipated.

TFA Norbert K. Sablan was instructed to proceed to the location and meet with Parole Officers and Guam Police Department Violent Street Crimes Task Force S/A John A. Bagaforo. Upon TFA Sablan's arrival, he was briefed of the above incident. TFA Sablan was further informed that CRUZ is not gainfully employed. TFA Sablan seized the money and began proceedings to initiate an administrative forfeiture.

| 68. Submitted by: Agent/Officer Name (Print or type) | 69 Signature | 70. Date |
|---|---|---|
| TFA Norbert K. Sablan | | 03-12-2003 |
| 71. Co-Agent/Officer Name (Print or type) | 72. Signature | 73. Date |
| TFA Matt C. Ayuyu | | 03-12-2003 |
| 74. Approved by: Supervisor (Print or type) | 75. Signature | 76. Date |
| RAC Jeffrey Silk | | 3/13/03 |

Electronic Form Version Designed in JetForm 5.2 Version

026

# EXHIBIT "B"

# DETENEE / FULL-TIME / SPECIAL RELEASED PAROLEE
## STATEMENTS OF THE CONDITIONS UNDER WHICH THIS PAROLE IS GRANTED
### 02/07/02 to 02/06/2005

This Certificate of Parole will become effective on the date shown in its face after the following conditions are accepted by the prisoner as evidenced by his signature at the end thereof; duly witnessed:

1. That I will proceed to __address on record at Parole Services Division__, and upon arrival I will report in person immediately to my Parole Officer responsible for my supervision.

   Parole Officer: Donna M. Cruz                           MICHAEL P. QUINATA, CPO

2. That I will commit no crime.

3. That I will remain within the limits fixed in my Certificate of Parole and will not change address without permission of the Parole Officer.

4. That I will, between the first (1st) and fifth (5th) of each month, and on the final day of my parole, make a truthful written report to the Parole Officer; I will permit the Parole Officer to visit me at reasonable times at my home or elsewhere; and I will promptly and truthfully answer all inquiries directed to me by the Parole Officer.

5. That I will work regularly at a lawful occupation and support my dependents if any. When out of work, I will notify the Parole Officer immediately and will not change employment without the written approval of the Parole Officer.

6. That I will refrain from associating with persons known to be engaged in criminal activities, will not associate with persons known to have been convicted of crime without permission of the Parole Officer.

7. That I will not have in my possession any firearm or other dangerous weapon without the written permission of the Parole Officer and Parole Board.

8. That I will reside in a boarding home, hospital, or other parole residence facility, for such period and under such supervision or treatment as the Parole Board may deem appropriate.

9. That I will submit to available medical or psychiatric treatment as directed by my Parole Officer or the Parole Board as they may deem appropriate for my treatment and rehabilitation.

10. That I will pay all fines and any other costs imposed on me by the courts as required by law.

11. Special conditions are:

    a. That I will not be away from home between the hours of 9:00 P.M. and 6:00 A.M. except when actively employed and authorized by the Parole Officer.

    b. That I will not operate any motor vehicle unless authorized by my Parole Officer.

    c. That I will immediately contact my Parole Officer if I am arrested or questioned by law enforcement officers regarding any crime as a suspect or witness.

    d. That I will communicate with the Parole Board, at any time, if my Parole Advisor and Parole Officer are unavailable.

    e. That I will not purchase, possess, use, consume or administer controlled substances in any form, nor use or consume any alcoholic beverages or liquor, nor frequent such places where such articles are sold, dispensed, used or given away, except as administered or directed by competent medical authority.