1  VLHCruz.EXH

2  LEONARDO M. RAPADAS
   United States Attorney
3  KARON V. JOHNSON
   Assistant U.S. Attorney
4  Suite 500, Sirena Plaza
   108 Hernan Cortez Avenue
5  Hagatna, Guam 96910
   TEL: (671) 472-7332
6  FAX: (671) 472-7334

7  Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

JAN 1 4 2008

**JEANNE G. QUINATA**
**Clerk of Court**

8              **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE DISTRICT OF GUAM**

| | |
|---|---|
| 10  UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 04-00053 |
| 11                    Plaintiff, ) | |
| 12            vs.                 ) | **UNITED STATES'** **EXHIBIT LIST** |
| 13  VINCE LUIS HOCOG CRUZ,  ) | |
| 14                    Defendant. ) | |

15

16      COMES NOW the United States and hereby files with the Court the following proposed

17  exhibits to be introduced in its case-in-chief:

18      Respectfully submitted this 14th day of January, 2008.

19                              LEONARDO M. RAPADAS
                                United States Attorney
20                              Districts of Guam and CNMI

21              By:      _____
22                              KARON V. JOHNSON
                                Assistant U.S. Attorney

23

24

25

26

27

28

# UNITED STATES' EXHIBIT LIST

| NO. | DESCRIPTION | Date Identified | Date Admitted |
|-----|-------------|-----------------|---------------|
| 1) | Photograph of methamphetamine hydrochloride seized 1/29/03 | | |
| 2) | Laboratory analysis of Exhibit 1 | | |
| 3) | Packaging materials and digital scale seized 1/29/03 | | |
| 4) | Drug records | | |
| 5) | Plea agreement of Thu Loan Thai Dang | | |





GOVERNMENT
EXHIBIT

_____/_____

**U.S. Department of Justice**
**Drug Enforcement Administration**

Read Instructions on Reverse before completing.

# REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

**1. HOW OBTAINED (Check)**

☐ Purchase  ☒ Seizure  ☐ Free Sample
☐ Lab. Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal)
☐ Internal Body Carry  ☐ Other (Specify)

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|
| RB-03-0013 | | WGA3I |

**4a. WHERE OBTAINED (City, State/Country)**
Tiyan, Guam

**4b. DATE OBTAINED**
11-18-2003

**5. FILE TITLE**
CRUZ, Vince Luis H.

**6a. REFERRING AGENCY (Name)**
Guam Police Department

**6b. REFERRAL**
☒ Case No. OR ☐ Seizure No.
No. 03-01361

**7. DATE PREPARED**
11-18-2003

**8. GROUP NO.**
5

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 1 | | Crystal Meth | One (1) clear zip lock bag containing a crystalline substance. | | 58.6 gross grams | |
| | | | | | | |
| | | | | | | |
| | | | Ex. 1 was previously contained in a Guam Police Department (GPD) evidence bag (DEA Ex. N-1) | | | |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?** ☐ NO (included above) ☒ YES (If Yes, enter exhibit no. and describe original container fully)

**REMARKS:**
On 01-29-2003, Guam Parole Officer conducted a search of Vince Luis H. CRUZ' residence and located Ex. 1 within the bedroom. GPD VSCTF S/A John A. Bagaforo and GRO TFO Norbert K. Sablan later responded to the residence. S/A Bagaforo seized Ex. 1, which was submitted to the GPD Property Section. On 11-18-2003, TFO Sablan, as witnessed by TFO Frank R. Santos, obtained Ex. 1 and processed it in accordance with DEA procedure. TFO Sablan subsequently mailed, via registered mail (RR 076 510 675 US), to the Southwest Laboratory for analysis and safekeeping.

**17. SUBMITTED BY SPECIAL AGENT (Signature)**
Norbert K. Sablan

**18. APPROVED BY (Signature & Title)**
RAC Jeffrey A. Silk

## LABORATORY EVIDENCE RECEIPT REPORT

**19. NO. PACKAGES**
1

**20. RECEIVED FROM (Signature & Date)**
RR-076-510675

**21. Print or Type NAME and TITLE**

**22. SEAL**
☐ Broken  ☒ Unbroken

**23. RECEIVED BY (Signature & Date)**
11/25/03

**24. Print or Type NAME and TITLE**

## LABORATORY REPORT

17107

**25. ANALYSIS SUMMARY AND REMARKS**

Ex. #1

Gross Wt.: 57.5 gm
Net Wt.: 31.9 gm
Contains: d-Methamphetamine HCl
1-Ephedrine HCl

GOVERNMENT EXHIBIT
2

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 1 | 171078 | d-Methamphetamine HCl | 86 | % | — | 27.4 gm | 30.1 gm |
| | | | | | | | |
| | | | | | | | |

**34. ANALYST (Signature)**
Ramona Wood O'Jon

**35. TITLE**
Forensic Chemist

**36. DATE COMPLETED**
12/15/03

**37. APPROVED BY (Signature & Date)**
William F. Phillips  12-17-03

**38. TITLE**
Laboratory Director

**39. LAB. LOCATION**
Vista, CA

DEA Form - 7
(Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

1 - Prosecution



GOVERNMENT
EXHIBIT

3



GOVERNMENT
EXHIBIT

4

Vince -

8/1/03 ⇒ 50 = 11,250

| $4,250 | paid

8/3/03 ⇒ 200 = 45,000

⇒ | $21,000 | paid

8/6/03 ⇒ 300 = 67,500

$31,345
$23,510 } | 54,855 | paid

8/16/03 ⇒ 400

10,000 paid
10,000 paid
8,780 paid
11,770 paid

8-29-03
100 ⇒ lại lại —

$ 100 ⇒

Dunn —

8/19/03 ⇒ 100   lấy lại   — N C X ✓

9/01/03 ⇒   50  ⎤
                    ⎥  paid = $ 7,700 + 9,500 + 7,800
9/22/03 ⇒   50  ⎦              $ 25,000          Ⓟ

                              $ 10,085 + $ 1900
10/03/03 ⇒   10   Ⓟ              + 10,300

10/17/03 ⇒   100      Hãy —

Kelly —
                              13,750 - 8,600 = 5,150 - 1,200
9/02/03 = 50 →  paid $ 2,250 + 3,750 + 2600      $4,900
                        $ 8,600 + 1,200   Ⓟ

10/03/03 ⇒   50 - 13,750   ⎤
                              ⎥
10/18/03 ⇒   50 = 12,500   ⎦

10/25/03 ⇒   50    Jose  Ⓟ  $3,750
      $ 10,000 paid
                        Còn lại  $ 3 750

Dung = $ 7,700

- $ 4000   for NiNA Rent
- $ 1200   House Rent
  $ 5200

Still $ 2,500 Chanh lấy using for —

Đã lấy Alan — $ 2,000
  — 1600 sent cho Chị Hằng
    400 — 160 for Rent Car

    240 left over

to Mine — $ 4,000
Kent — $ 2,000
House rent — $ 1,200    $ 10,200
Chanh — $ 3,000

Ra Alan lấy $ 2,000  sent cho Chi Hồng  $ 1,600
              + tiền xe của kent
                 $ 250

$ 25,000          Duiong
$ 6,350           Ketty — 3,750 + 2,600
$ 31,350                    6,350
- 10,200
$ 21,180

$ 600 + 240 + 500 + 500 + 2000 +

710 + 3000



7,700
17,200
3750
20,950
10,200
10,750

FILED
DISTRICT COURT OF GUAM

JAN 27 2004

MARY L. M. MORAN
CLERK OF COURT

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Agana, Guam 96910
PHONE: 472-7332
FAX: 472-7334

Attorneys for the United States of America

THE VANDEVELD LAW OFFICES, P.C.

Received by: _____
Date: 1/27/04    Time: 2:35 pm

# IN THE UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 03-00095 |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| THU LOAN THAI DANG, aka KIMMIE, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(B), the United States and the defendant, THU LOAN THAI DANG aka KIMMIE, enter into the following plea agreement:

1. The defendant agrees to enter a guilty plea to Counts I, III, IV, VI, VII, and VIII of a Superseding Indictment charging her with conspiracy to import over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 952(a), 960 and 963 (Count I); conspiracy to distribute over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 841(a)(1) and 846 (Count III); importation of over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 952(a) and 960

1

GOVERNMENT EXHIBIT
5

(Count IV); distribution of over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Section 841(a)(1) (Count VI); conspiracy to launder monetary instruments in violation of 18 U.S.C. Sections 1956(a)(1)(B)(i), (a)(2)(B)(i) and (h) (Count VII); and forfeiture pursuant to 21 U.S.C. Section 853 and 18 U.S.C. Section 982 (Count VIII). The government will move to dismiss Counts II and V against her upon sentencing.

2. The defendant, THU LOAN THAI DANG aka KIMMIE, further agrees to fully and truthfully cooperate with federal law enforcement agents concerning their investigation of the importation, possession, and distribution of controlled substances, money laundering, and related unlawful activities, including the disposition of profits from and assets relating to such activities. She agrees to testify fully and truthfully before any grand juries and at any trials or proceedings against any other co-conspirators if called upon to do so for the United States, subject to prosecution for perjury for not testifying truthfully. The United States will make this cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that she remains liable and subject to prosecution for any non-violent Federal or Territorial offenses that she does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant in the District of Guam or the Northern Mariana Islands for any other non-violent offenses now known to the government or which she reveals to federal authorities.

3. The defendant, THU LOAN THAI DANG aka KIMMIE, understands and agrees that any and all assets or portions thereof acquired or obtained by her as a direct or indirect result of illegal trafficking in drugs or used to facilitate such illegal activity shall be surrendered to the United States or any lawful agency as may be directed by the Court. The assets to be surrendered include, but are not limited to, cash, all bank accounts, money market accounts, stocks, bonds, certificates of deposit, personal property and real property, including but not limited to, all automobiles, jewelry, electronics, and other personalty.

4. The defendant, THU LOAN THAI DANG aka KIMMIE, further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner if called upon to do so by

- 2 -

the government. The defendant understands that such polygraph examinations may include, but will not be limited to, her knowledge of or involvement in unlawful drug and related activities, including money laundering, and her knowledge of others' involvement in such activities, and the identification of any and all assets and conveyances acquired in whole or in part by the defendant or others through such unlawful activities or the use of such assets or conveyances to further such unlawful activities. Defendant understands that the government will rely on the polygraph in assessing whether she has been fully truthful.

5. The defendant, THU LOAN THAI DANG aka KIMMIE, understands that the maximum sentence for conspiracy to import over 1.5 kilograms of methamphetamine hydrochloride is life imprisonment, a $4,000,000 fine, and a minimum mandatory term of ten (10) years of incarceration which may not be stayed or suspended by the court. Any sentence imposed shall include a term of supervised release of at least five (5) years in addition to such terms of imprisonment, as well as such restitution as the court may order and a $100.00 special assessment fee. Defendant understands that if she violates a condition of supervised release at any time prior to the expiration of such term, the court may revoke the term of supervised release, thereby resulting in the additional incarceration of defendant for not more than five (5) years. Defendant also understands that the maximum sentence for conspiracy to distribute over 1.5 kilograms of methamphetamine hydrochloride is life imprisonment, a $4,000,000 fine, and a minimum mandatory term of ten (10) years of incarceration which may not be stayed or suspended by the court. Any sentence imposed shall include a term of supervised release of at least five (5) years in addition to such terms of imprisonment, as well as such restitution as the court may order and a $100.00 special assessment fee. Defendant further understands that if she violates a condition of supervised release at any time prior to the expiration of such term, the court may revoke the term of supervised release, thereby resulting in the additional incarceration of defendant for not more than five (5) years.

Defendant also understands that the maximum sentence for importation of over 1.5 kilograms of methamphetamine hydrochloride is life imprisonment, a $4,000,000 fine, and a minimum mandatory term of ten (10) years of incarceration which may not be stayed or

- 3 -

1 suspended by the court. Any sentence imposed shall include a term of supervised release of at
2 least five (5) years in addition to such terms of imprisonment, as well as such restitution as the
3 court may order and a $100.00 special assessment fee. Defendant understands that if she violates
4 a condition of supervised release at any time prior to the expiration of such term, the court may
5 revoke the term of supervised release, thereby resulting in the additional incarceration of
6 defendant for not more than five (5) years. Defendant further understands that the <u>maximum</u>
7 sentence for distribution of over 1.5 kilograms of methamphetamine hydrochloride is life
8 imprisonment, a $4,000,000 fine, and a minimum mandatory term of ten (10) years of
9 incarceration which may not be stayed or suspended by the court. Any sentence imposed shall
10 include a term of supervised release of at least five (5) years in addition to such terms of
11 imprisonment, as well as such restitution as the court may order and a $100.00 special
12 assessment fee. Defendant further understands that if she violates a condition of supervised
13 release at any time prior to the expiration of such term, the court may revoke the term of
14 supervised release, thereby resulting in the additional incarceration of defendant for not more
15 than five (5) years.

16      Defendant also understands that the <u>maximum</u> sentence for conspiracy to launder
17 monetary instruments is twenty (20) years imprisonment, a $500,000 fine or a fine of not more
18 than twice the value of the property involved in the transaction, whichever is greater, and a $100
19 special assessment fee. Any sentence may include a term of supervised release of not more than
20 three (3) years in addition to such term of imprisonment. Defendant understands that if she
21 violates a condition of supervised release at any time prior to the expiration of such term, the
22 court may revoke the term of supervised release, thereby resulting in the additional incarceration
23 of defendant for not more than two (2) years.

24      The special assessment fee of $500.00 must be paid immediately upon sentencing. The
25 government will recommend a fine within the Sentencing Guidelines range. If defendant is
26 financially unable to immediately pay the fine in full, defendant agrees to make a full disclosure
27 of her financial status to the United States Attorney's Office by completing a Financial Disclosure
28 Form (OBD-500) for purpose of fixing a monthly payment schedule. Defendant understands

- 4 -

that, by law, interest accrues on any remaining balance of the debt. If defendant cooperates as set forth in Paragraphs 2, 3, and 4, the government will recommend that defendant receive the minimum term of incarceration legally available under the applicable statutes and Sentencing Guidelines. If defendant does not fully cooperate as set forth in Paragraphs 2, 3, and 4, the government will recommend a sentence of incarceration within the applicable statutes and Guidelines range it may deem appropriate.

6. (a). The Government agrees to inform the sentencing Judge and the Probation Office of the nature and extent of Defendant's cooperation. The Government cannot and does not make any promise or representations as to what guideline range will be found applicable to Defendant at sentencing, or what sentence she will ultimately receive.

(b). A motion for downward departure from the applicable guidelines pursuant to U.S.S.G. § 5K1.1 will be filed by the Government requesting the Court to depart below the applicable guideline range if, and only if, in the sole discretion of the United States Attorney for the Districts of Guam and the Northern Mariana Islands, it is determined that Defendant had rendered substantial assistance to the Government in its investigation(s) and prosecutions(s) of others. Defendant understands that it is within the province of the United States Attorney to determine if said cooperation or future cooperation rises to the level of substantial assistance, but it is solely within the discretion of the Court to decide if a downward departure will actually be made. Defendant understands that there have been no promises or representations by the United States that any motion for downward departure will be filed. The United States has made no promise, implied or otherwise, that Defendant will be granted a "departure" for "substantial assistance."

(c). In addition to filing a motion under U.S.S.G. § 5K1.1 if Defendant provides "substantial assistance" as described above, the United States, in its sole discretion, may file a motion pursuant to Title 18, United States Code, Section 3553(e), to permit the sentencing Judge to impose a sentence below a level established by statute as a minimum sentence. Defendant acknowledges and agrees that no promise has been made to her that a motion will be made for

- 5 -

departure even if she complies with the terms of this Agreement in all respects but is unable to provide "substantial assistance."

(d). The United States agrees to consider the totality of the circumstances, including but not limited to the following factors, in determining whether, in the assessment of the United States, Defendant has provided "substantial assistance" which would merit a Government request for a downward departure from the applicable guideline sentencing range and/or a sentence below a mandatory minimum:

> (1) the United States' evaluation of the significance and usefulness of any assistance rendered by defendant;

> (2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant;

> (3) the nature and extent of defendant's assistance;

> (4) any injuries suffered or any danger or risk of injury to defendant or defendant's family resulting from any assistance provided by defendant; and,

> (5) the timeliness of any assistance provided by defendant.

7. The defendant understands that to establish a violation of conspiracy to import over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 952(a), 960 and 963, the government must prove each of the following elements beyond a reasonable doubt:

> First: there was an agreement between two or more persons to import over 1.5 kilograms of methamphetamine hydrochloride; and

> Second, the defendant became a member of the conspiracy knowing of its object to import methamphetamine hydrochloride, and intending to accomplish it.

The defendant also understands that to establish a violation of conspiracy to distribute over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 841(a)(1) and 846, the government must prove each of the following elements beyond a reasonable doubt:

> First: there was an agreement between two or more persons to distribute over 1.5 kilograms of methamphetamine hydrochloride; and

- 6 -

Second, the defendant became a member of the conspiracy knowing of its object to distribute methamphetamine hydrochloride, and intending to accomplish it.

The defendant also understands that to establish a violation of importation of over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Sections 952 and 960, the government must prove each of the following elements beyond a reasonable doubt:

First: the defendant knowingly brought over 1.5 kilograms of methamphetamine hydrochloride into the United States; and

Second, the defendant knew that it was methamphetamine hydrochloride or some other prohibited drug.

The defendant also understands that to establish a violation of distribution of over 1.5 kilograms of methamphetamine hydrochloride in violation of 21 U.S.C. Section 841(a)(1), the government must prove each of the following elements beyond a reasonable doubt:

First: the defendant knowingly delivered over 1.5 kilograms of methamphetamine hydrochloride; and

Second, the defendant knew that it was methamphetamine hydrochloride or some other prohibited drug.

The defendant also understands that to establish a violation of conspiracy to launder monetary instruments in violation of 18 U.S.C. Section 1956(h), the government must prove each of the following elements beyond a reasonable doubt:

First: there was an agreement between two or more persons to launder monetary instruments; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects, i.e., to engage in financial transactions which involved drug proceeds derived from the unlawful distribution of methamphetamine hydrochloride and which were designed to conceal or disguise the nature, location, source, ownership or control of such proceeds, or to transport, transmit or transfer monetary instruments or funds from a place in the United States to a place outside the United States, knowing that such monetary instruments or funds represented drug proceeds derived from the unlawful distribution of methamphetamine hydrochloride and knowing that such transportation, transmission or transfer were designed to conceal or disguise the nature, location, source, ownership or control of such proceeds, and intending to help accomplish it.

- 7 -

8. The defendant understands that the sentencing guidelines apply to this offense. The government and the defendant stipulate to the following facts for purposes of the sentencing guidelines:

a. The defendant was born on February 10, 1972 , and is a citizen of the United States.

b. If the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating information so provided will not be used against defendant in assessing her punishment, and therefore, pursuant to § 1B1.8 of the sentencing guidelines, such information should not be used in determining the applicable guidelines range.

c. Beginning in 1997, the defendant participated in a conspiracy with Kong Kwok Chan a/k/a Ken Chan, Chanh Dinh Nguyen a/k/a Chris, and other individuals to import and distribute over 6.4 kilograms of methamphetamine hydrochloride also known as "ice" which was brought into Guam from Hong Kong. On several occasions beginning in 1997, the defendant, Chan, Nguyen and others imported and distributed over 1.5 kilograms of ice to other persons on Guam. The defendant and others used the following vehicles - the Lexus LS 430 sedan (license #MA I 3808); the Lexus Sport Utility Vehicle (license #MNG 5138); the Toyota Camry sedan (license #INA 2089); the BMW Z3 Roadster sport coupe (license #AHT 6593); and two Toyota trucks (licenses # 1737 MSR and #372 TPL) - to distribute such ice and collect drug proceeds from such distribution.

During the conspiracy the defendant and others disposed of the cash derived from their illegal drug trafficking by transferring large amounts of cash to bank accounts in Guam, the mainland United States, to other individuals in Hong Kong and elsewhere. Sometime in 2001, defendant disposed of the drug proceeds by causing Chanh Dinh Nguyen to wire large amounts of this cash to individuals in Hong Kong via Western Union, also known as Pacific Telegraph, located in the Agana Shopping Center. Each of these transfers, which was more than $10,000 in

- 8 -

value, affected interstate and foreign commerce:

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 04/01/2001 | $10,430 | 05/26/2001 | $10,430 |
| 04/01/2001 | $10,430 | 08/19/2001 | $11,505 |
| 05/23/2001 | $10,430 | 08/19/2001 | $11,505 |

TOTAL: $64,730

In addition, defendant used cash derived from her illegal drug trafficking to purchase a residence in Oregon, to wit, 10758 S.E. Forrest View Lane, Portland, Oregon, by causing cash to be sent to confederates in Oregon who purchased cashiers checks through financial institutions to apply to purchasing the property.

Also, between August 2001 and January 2003, the defendant purchased at least 46 personal money orders at PostNet Guam, each of which was in the amount of $2,500 or less, and caused to send them to other individuals in Oregon. The aggregate amount of said money orders was $101,000. During the conspiracy the defendant knew that said cash which she caused to send to Hong Kong and the mainland United States represented drug proceeds from the unlawful sale, importation, and distribution of methamphetamine hydrochloride in Guam and elsewhere. The defendant was also aware that such monetary transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of said drug trafficking proceeds.

Prior to her arrest on November 13, 2003, the defendant was residing with Chan and Nguyen at Unit A-4 New Tamuning Villa, Guam. On about November 13, 2003, when a search warrant was executed on defendant's residence, law enforcement agents seized over 6.4 kilograms of methamphetamine hydrochloride, drug paraphernalia, jewelry and over $116,000 in U.S. currency. Defendant acknowledges that such cash, jewelry, and the following vehicles - - the Lexus LS 430 sedan (license #MA I 3808); the Lexus Sport Utility Vehicle (license #MNG 5138); the Toyota Camry sedan (license #INA 2089); the BMW Z3 Roadster

- 9 -

sport coupe (license #AHT 6593); and two Toyota trucks (licenses # 1737 MSR and #372 TPL) - - are the direct proceeds of drug trafficking.

d. The defendant understands that notwithstanding any agreement of the parties, the United States Probation Office will make an independent application of the Sentencing Guidelines. The defendant acknowledges that should there be discrepancies in the final sentencing guidelines range projected by her counsel or any other person, such discrepancy is not a basis to withdraw her guilty plea.

9. The defendant understands that this plea agreement depends on the fullness and truthfulness of her cooperation. Therefore, defendant understands and agrees that if she should fail to fulfill completely each and every one of her obligations under this plea agreement, or make material omissions or intentional misstatements or engage in criminal conduct after the entry of her plea agreement and before sentencing, the government will be free from its obligations under the plea agreement. Thus, defendant, in addition to standing guilty of the matters to which she has pled pursuant to this agreement, shall also be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed. In any such prosecution, the prosecuting authorities, whether Federal, State, or Local, shall be free to use against her, without limitation, any and all information, in whatever form, that she has provided pursuant to this plea agreement or otherwise; defendant shall not assert any claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other provision of law, to attempt to bar such use of the information.

10. Defendant understands that whether she has completely fulfilled all of the obligations under this agreement shall be determined by the sentencing court in an appropriate proceeding at which any disclosures and documents provided by defendant shall be admissible and at which the United States shall be required to establish any breach by a preponderance of the evidence. In determining whether there has been a breach, the parties agree that any polygraph results and the polygrapher's conclusions and opinions shall be admissible.

- 10 -

11. The defendant understands that her sentencing may be continued until after the indictment and trial of any associates involved. The determination of whether to seek a continuance of defendant's sentencing shall be at the sole discretion of the United States. This will also enable the Court to see the full degree of the defendant's cooperation. The defendant therefore waives any right she may have to any speedy sentencing and hereby agrees to any continuance of her sentencing date as it may become necessary.

12. The defendant agrees to waive any right to appeal or to collaterally attack this conviction. The defendant reserves the right to appeal the sentence actually imposed in this case.

13. If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute defendant for all charges of which it then has knowledge, and any charges that have been dismissed will be automatically reinstated or may be represented to a grand jury with jurisdiction over the matter. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, Speedy Trial Act, or constitutional restrictions as to the time of the bringing of such charges.

14. The defendant acknowledges that she has been advised of her rights as set forth below prior to entering into this plea agreement. Specifically, defendant has been fully advised of, has had sufficient opportunity to reflect upon, and understands the following:

a. The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

b. Her right to be represented by an attorney;

c. Her right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses against her, and the right not to be compelled to incriminate herself, that is, the right not to testify;

d. That if she pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, she waives, that is, gives up, the right to a trial;

- 11 -

e. Because this plea is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant understands that she may not withdraw her guilty plea even if the court does not accept the sentencing recommendation of the government or his counsel;

f. That, upon entry of a plea of guilty, or thereafter, the Court may ask her questions about the offenses to which she has pled, under oath, and that if she answers these questions under oath, on the record, her answers may later be used against her in prosecution for perjury or false statement if an answer is untrue;

g. That she agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

h. That she has read the plea agreement and understands it.

i. The defendant is satisfied with the representation of her lawyer and feels that her lawyer has done everything possible for her defense.

DATED: 01-27-04

_Thu Loan Dang_
THU LOAN THAI DANG aka KIMMIE
Defendant

DATED: 27 Jan 04

_Curtis C. Van de Veld_
CURTIS C. VAN de VELD
Attorney for Defendant

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

Approved:

DATED: 1·27·04

_Russell C. Stoddard_
RUSSELL C. STODDARD
First Assistant U.S. Attorney

DATED: 1/27/04

By:
_Marivic P. David_
MARIVIC P. DAVID
Assistant U.S. Attorney

- 12 -