

**ORIGINAL**

1  VHCruz.stp

2  LEONARDO M. RAPADAS
United States Attorney
3  KARON V. JOHNSON
Assistant U.S. Attorney
4  Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
5  Hagatna, Guam 96910
Telephone: (671) 472-7332
6  Telecopier: (671) 472-7334

7  Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM
APR 1 8 2008 ʀD.
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>VINCENT LUIS HOCOG CRUZ,<br><br>　　　　　Defendant. | CRIMINAL CASE NO. 04-00053<br><br>STIPULATION OF PARTIES<br>CONCERNING CERTAIN EVIDENCE<br>TO BE PRESENTED AT HEARING |

The parties in the above-entitled matter, the United States of America, and the defendant through his counsel, Samuel S. Teker, hereby stipulate that for purposes of the evidentiary hearing to be set for defendant's motion to suppress evidence seized during the search of his residence by Guam parole officers, the parties will stipulate as follows:

Exhibit 1, the report of Parole Officer Donna M. Cruz. The parties stipulate that if called as a witness in the evidentiary hearing, Ms. Cruz would testify as set forth in her report;

Exhibit 2, the conditions of parole signed by defendant prior to his release from the Department of Corrections. The parties stipulate that defendant signed this document in the presence of his parole officer Donna M. Cruz, on February 7, 2002.

//

-1-

| | |
|---|---|
| 1 | In addition, the parties will request that the court take judicial notice of the following |
| 2 | Guam laws: 9 GCA § 80.76, 9 GCA § 80.80, 9 GCA § 88.35, and 9 GCA § 85.54, copies of |
| 3 | which are attached hereto. |
| 4 | SO STIPULATED. |

DATED: 4-18-08

SAMUEL S. TEKER
Attorney for Defendant

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

DATED: 4/18/08     By: 

KARON V. JOHNSON
Assistant U.S. Attorney

# DEPARTMENT OF CORRECTIONS
## PAROLE SERVICES DIVISION
### TIYAN, GUAM
Tel: 473-7001

JANUARY 31, 2003

**MEMORANDUM**

**TO:** CHIEF PAROLE OFFICER

**FROM:** PAROLE OFFICER

**SUBJECT:** REF: PAROLEE VINCE L.H. CRUZ



**EVENTS LEADING TO OPERATION "WALK TO REMEMBER"**
On January 24, 2003 (Friday) at around 1630 hours parolee Vince L.H. Cruz reported to PSD, he was accompanied by Millie Santos and her two year old daughter Kai' Mana. Parolee informed me that his cousin Jonah Mesa had left the island and that he plans to get married with Millie, he wanted to move from Mong Mong to Tamuning with Ms. Santos. Ms. Santos was briefed to parolee Cruz' conviction CSC, she was also informed that she is not to leave her child alone with Parolee Cruz. It was then an emergency erupted with another client Bobbie Fejeran and PO Camacho instructed me to remedy it. Parolee's change of status was completed and verbally approved but only for the weekend, he was instructed to call in on Monday, January 27th to further discuss issues. Parolee Cruz did not call as of January 29th.

On January 29, 2003 at around 0830 hours PO Linda Charfauros informed me that on Friday January 24, 2003, CO Taijeron informed her that he had seen Parolee Vince L.H. Cruz at McDonald's on January 22, 2003 (Wednesday) at around 2400 hours and appeared to be intoxicated. Parolee Cruz acknowledged CO Taijeron.

On January 29, 2003 at around 0840 hours CO Gray informed PO Martinez that he had seen parolee Candelaria Mendiola at around 0700 hours today with CO Ed Perez. CO Perez was driving a green Rodeo SUV. PO Martinez asked if could assist. I informed her that I wanted to follow up on two of my clients, Arnold Kitano and Vince L.H. Cruz. Both Mendiola and Kitano were found and that was when permission from PO Camacho and Chief Parolee Officer as to continue with the check for Parolee Cruz and others this evening for Operation "Walk to Remember".

051

## OPERATION "WALK TO REMEMBER"

On or about January 29, 2003 at around 2100 hours PO's were briefed as to the operation. PO Charfauros, PO Martinez, CO Gray and myself present. A phone call was made to verify if Parolee Cruz was at home, the telephone number was a cell phone and no one answered. We then proceeded to Tamuning, after several minutes of trying to find the location of parolee's residence at around 2155 hours we arrived. I noticed that there were beer bottles outside the door of the condo. I knocked on the door and we were greeted by parolee Cruz who was alone at the time. I asked we could just take a look around and parolee agreed. I noticed numerous valuable items such as duty free display perfumes, large screen TV and so forth. I inquired about if parolee had committed any curfew violations and parolee denied this. He led us into the Master Bedroom. A cursory check was conducted and PO Martinez who found a dark colored bag on top of a DVD player, small zip lock bags, rubber bands and an electronic scale were found. It was then parolee was cuffed and instructed to sit on the bed. A "Smirnoff" alcoholic beverage was found on top of a night stand still cool to the touch. Parolee was asked if there were any drugs or weapons in the home. He stated "no". PO Martinez later found a drawer filled with large amount of U.S. currency mostly in large bills of fifties and hundreds.

At this time Ms. Santos arrived at the condo with her daughter, and was being interviewed by PO Charfauros in the living room. Parolee then yelled to Ms. Santos to bring him a drink, I offered him water that was on the dresser. He stood up and said "no" and nudge CO Gray. He insisted that he wanted a cold drink in the refrigerator. We instructed him to sit and calm down and that he needed to co-operate. A soda was given to him. Shortly after that he insisted on smoking a cigarette, he was given this as well. PO Camacho was informed of our findings and also notified that parolee was becoming combative an belligerent. It was then when it was decided that parolee be removed for safety reasons. The search ceased and we secured the area and took into custody, the dark colored bag containing small zip lock bags, rubber bands and the large amount of U.S. Currency in the dresser. PO Camacho relayed for PO Martinez and myself to go back up to the condo and request to continue the search with Ms. Santos while PO Charfauros and CO Gray rendezvous with him at Hornet Sporting Goods and parolee in custody.

PO Martinez and myself knocked on the door and asked Ms. Santos to continue the search, she stated "go ahead", it is noteworthy to mention that Ms. Santos was present during the search. PO's asked if there were any drugs in the condo and she stated "no". She did inform us that she had a "tip" box from her employment at "Somjai's", the box contained mostly ones, fives and ten dollar bills. PO Camacho arrived at the condo shortly after that and informed GPD Officer J. Bagaforo of our findings.

At this time Ms. Santos contacted her daughter's father Patrick Madayag and arrived shortly after in light colored sedan. PO Martinez, PO Camacho and myself left the building and locked the door so Ms. Santos could bring her daughter down stairs to Mr. Madayag.

Parolee needed to use the restroom and was escorted by CO Gray and entered the condo and utilized the guest restroom. PO Camacho instructed that parolee be transported to ACF for safety reasons.

052

PO Camacho continued with the search, he found what a appeared to be a glass "Ice" pipe in the master bathroom trash can. He also found a zip lock bag 3x5 partially filled with a crystalline substance hidden in a blue jacket hanging in the closet in the master bedroom. A fifty dollar bill was also found by PO Martinez in a traveling bag. Ms. Santos stated that this money was hers.

GPD Officer J. Bagaforo arrived and took a report. Crime Lab was also informed to meet us as well DEA Agent N. Sablan. Pictures were taken from both GPD and DEA. DEA Agent N. Sablan took custody of the U.S. currency from the dresser, box and the fifty dollar bill found in the baggage. GPD J. Bagaforo took custody of the suspected crystalline substance. Also was found was a receipt for a storage in the name of John Peter Cruz and secondary person in charge to access the unit was Parolee Vince Cruz. Officer Bagaforo took the receipt in order to obtain a search warrant. Operations ceased at around 0400 hours January 30, 2003 and started up awaiting a search warrant at 0800 hours. At around 1129 hours we were informed that the search warrant was in order signed by Judge Manibusan and to meet at the Guam Mini Storage, Harmon. At around 1134 hours PO Martinez, CO Gray and myself arrived along with DEA and VCTF Officers. The storage unit B-20 was opened only to find approximately 17 large tires with rims, entertainment center, a large Air Compressor, portable air-condition unit that appeared to tampered with. This officer interviewed the Assistant Manager Pam Pangelinan who stated that the last time she had seen any enter the storage unit was about two weeks ago. Two men, the first one was John P. Cruz and the second one was parolee Vince L.H. Cruz, she identified him from the Quick Reference that was presented. Negative on findings of any drugs, paraphernalia, or weapons. Copies of the search warrant was place outside and inside the storage unit, we secured at about 1200 hours.

Donna M. Cruz

**DETENTION / FULL-TIME / SPECIAL RELEASE / PAROLEE**
**STATEMENTS OF THE CONDITIONS UNDER WHICH THIS PAROLE IS GRANTED**
02/07/02 to 02/06/2005

This Certificate of Parole will become effective on the date shown in its face after the following conditions are accepted by the prisoner as evidenced by his signature at the end thereof, duly witnessed:

1. That I will proceed to ___address on record at Parole Services Division___, and upon arrival I will report in person immediately to my Parole Officer responsible for my supervision.

    Parole Officer: Donna M. Cruz     MICHAEL P. QUINATA, CPO

2. That I will commit no crime.

3. That I will remain within the limits fixed in my Certificate of Parole and will not change address without permission of the Parole Officer.

4. That I will, between the first (1st) and fifth (5th) of each month, and on the final day of my parole, make a truthful written report to the Parole Officer; I will permit the Parole Officer to visit me at reasonable times at my home or elsewhere; and I will promptly and truthfully answer all inquiries directed to me by the Parole Officer.

5. That I will work regularly at a lawful occupation and support my dependents if any. When out of work, I will notify the Parole Officer immediately and will not change employment without the written approval of the Parole Officer.

6. That I will refrain from associating with persons known to be engaged in criminal activities, will not associate with persons known to have been convicted of crime without permission of the Parole Officer.

7. That I will not have in my possession any firearm or other dangerous weapon without the written permission of the Parole Officer and Parole Board.

8. That I will reside in a boarding home, hospital, or other parole residence facility, for such period and under such supervision or treatment as the Parole Board may deem appropriate.

9. That I will submit to available medical or psychiatric treatment as directed by my Parole Officer or the Parole Board as they may deem appropriate for my treatment and rehabilitation.

10. That I will pay all fines and any other costs imposed on me by the courts as required by law.

11. Special conditions are:

    a. That I will not be away from home between the hours of 9:00 P.M. and 6:00 A.M. except when actively employed and authorized by the Parole Officer.

    b. That I will not operate any motor vehicle unless authorized by my Parole Officer.

    c. That I will immediately contact my Parole Officer if I am arrested or questioned by law enforcement officers regarding any crime as a suspect or witness.

    d. That I will communicate with the Parole Board, at any time, if my Parole Advisor and Parole Officer are unavailable.

    e. That I will not purchase, possess, use, consume or administer controlled substances in any form, nor use or consume any alcoholic beverages or liquor, nor frequent such places where such articles are sold, dispensed, used or given away, except as administered or directed by competent medical authority.

    f. That I will submit to any drug and alcohol examinations as ordered by the Guam Parole Board, Chief Parole Officer and/or Parole Officer.

    g. That I will follow all oral and/or written instructions given to me by Parole Services Division and the Guam Parole Board.

    h. That I will permit parole officers to search my person, vehicle and residence for firearms and illegal controlled substances at any time such as search is requested. Failure to allow a search will be considered a violation of parole.

    i. That I will obtain employment within sixty (60) days upon being placed on parole. I understand that failure to obtain employment will result in my placement in the parole residence facility until such time that I secure employment.

    j. That I will refrain from any common-in-law relationship (co-habitation) unless legally married. I understand that if I do not comply with this condition I will be brought before the Guam Parole Board.

    k. That I will abide by all of the conditions as stipulated in my judgement.

    l. That I will perform community service as designated by my parole officer.

I understand that my release rests in the discretion of the Guam Parole Board and that if I do not demonstrate capacity and willingness to fulfill the obligations of a law-abiding citizen, or if my continuance on parole becomes detrimental to the integrity of the parole system or incompatible with the welfare of society, I may be arrested in accordance with provisions of Section 80.82 of the Criminal and Correctional Code of Guam and re-imprisoned pending a hearing to determine if my parole or conditional release should be revoked.

I have read or had read to me, the foregoing conditions governing my release on parole. I fully understand them, and will abide and strictly follow them. I also understand that if I violate them in any manner, I may be re-committed to prison. I have also received my personal copy of this Statement of the Conditions Under Which This Parole is Granted.

Vince L.H. Cruz
PAROLEE'S SIGNATURE     DATE: 2/7/02

Donna M. Cruz, PO I
PAROLE OFFICER'S SIGNATURE     DATE: 2/7/02

016

GOVERNMENT EXHIBIT 2



GU ST T. 9, § 80.76

9 G.C.A. § 80.76

GUAM CODE ANNOTATED
TITLE 9. CRIMES AND CORRECTIONS.
CHAPTER 80. DISPOSITION OF OFFENDERS
ARTICLE 5. PAROLE

### § 80.76. Standards Governing Release on Parole.

(a) Whenever the **board** considers the release of a prisoner for **parole**, the **board** shall order his release, if it is of the opinion that:

(1) his release is compatible with public safety and security;

(2) there is substantial likelihood that he will abide by law and conform to the **conditions** of **parole**;

(3) his release at that time would not depreciate the seriousness of his crime nor promote disrespect for law;

(4) his release would not have a substantially adverse effect on institutional discipline; and

(5) his continued correctional treatment, medical care or vocational or other training in the institution will not substantially enhance his capacity to lead a law-abiding life when released at a later date.

(b) In making its determination regarding a prisoner's release on **parole**, the **board** may consider, to the extent relevant, the following factors:

(1) the prisoner's personality, including his age and maturity, stability, sense of responsibility and any apparent development in his personality which may promote or hinder his conformity to law;

(2) the prisoner's **parole** plan;

(3) the prisoner's ability and readiness to assume obligations and undertake responsibilities;

(4) the prisoner's family status and whether he has relatives who display interest in him or whether he has other close and constructive associations in the community;

(5) the prisoner's employment history, his occupational skills and training, and the stability of his past employment;

(6) the type of home environment in which the prisoner plans to live;

(7) the prisoner's past use of narcotics or other harmful drugs, or past habitual and excessive use of alcohol;

(8) the prisoner's mental and physical make-up, including any disability or handicap which may affect his conformity to law;

(9) the prisoner's prior criminal record, including the nature and circumstances, recentness and frequency of previous offense;

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

GU ST T. 9, § 80.76

9 G.C.A. § 80.76

Page 2

(10) the prisoner's attitude toward law and authority;

(11) the prisoner's conduct in the institution, including whether he has taken advantage of the opportunities for self-improvement afforded by the institutional program;

(12) the prisoner's conduct and attitude during any previous experience of probation or **parole** and the recentness of such experience.

**SOURCE:** cf. Govt. Code § 39106; *M.P.C. § 305.7; Mass. ch. 264, § 29.

NOTES, REFERENCES, AND ANNOTATIONS

**COMMENT:** While any competent **parole board** is sure to take these criteria and factors into account, the Legislature and the public are entitled to the greater assurance that this explicit provision may give. No "good time" provisions are retained. The power of the **parole board** to release the prisoner provides more than enough incentive to a prisoner to give a good account of himself while in prison. On the other hand, automatic "good time" credit may have the effect of requiring the release of potentially dangerous person before such a release is warranted in the judgment of the Director of Corrections and the **parole board**.

9 G.C.A. § 80.76, GU ST T. 9, § 80.76

Current through P.L. 29-003 (2007)

Copr. © 2006. Government of Guam.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

GU ST T. 9, § 80.80

9 G.C.A. § 80.80

Page 1

GUAM CODE ANNOTATED
TITLE 9. CRIMES AND CORRECTIONS.
CHAPTER 80. DISPOSITION OF OFFENDERS
ARTICLE 5. PAROLE
§ 80.80. Conditions of Parole.

(a) If a prisoner is released on **parole**, the **board** shall require as a **condition** of his **parole** that he refrain from engaging in criminal conduct. The **board** may also require, as a **condition** of **parole**, either at the time of his release on **parole** or at any time and from time to time while he remains under **parole**, that he:

(1) support his dependents and meet other family responsibilities;

(2) devote himself to an approved employment or occupation;

(3) remain within the geographic limits fixed in his certificate of **parole**, unless granted written permission to leave such limits;

(4) report, as directed, upon his release to his **parole** officer at such regular intervals as may be required, answer all reasonable inquiries by the **parole** officer, and permit the officer to visit him at reasonable times at his home or elsewhere;

(5) reside at any place fixed in his certificate of **parole** and notify his **parole** officer of any change in his address or employment;

(6) reside in a **boarding** home, hospital, or other **parole** residence facility, for such period and under such supervision or treatment as the **board** may deem appropriate;

(7) refrain from possessing firearms or other dangerous weapons;

(8) submit himself to available medical or psychiatric treatment;

(9) refrain from associating with persons known to him to be engaged in criminal activities or, without permission of his **parole** officer, with persons known to him to have been convicted of a crime;

(10) pay a fine imposed by the court as provided in this Chapter;

(11) satisfy any other **conditions** reasonably related to his rehabilitation or to the public safety and security.

(b) Before release on **parole**, a parolee shall be provided with a certificate or **parole** setting forth the **conditions** of his **parole**, and shall sign a statement agreeing to such **conditions**.

SOURCE: Government Code § 39103; M.P.C. § 305.13; *Mass. ch. 264, § 33; N.J.S. 3:3-123.15.

NOTES, REFERENCES, AND ANNOTATIONS

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

GU ST T. 9, § 80.80

9 G.C.A. § 80.80

Page 2

**COMMENT:** Section 80.80 simply specifies in greater detail some of the **conditions** that may be imposed when **parole** is granted.

9 G.C.A. § 80.80, GU ST T. 9, § 80.80

Current through P.L. 29-003 (2007)

Copr. © 2006. Government of Guam.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Westlaw.**

GU ST T. 9, § 88.35

9 G.C.A. § 88.35

Page 1

GUAM CODE ANNOTATED
TITLE 9. CRIMES AND CORRECTIONS.
CHAPTER 88. CRIMINAL JUSTICE SUBSTANCE ABUSE ACT
§ 88.35. Sentencing of Felons: Parole of Felons: Treatment and Testing Based Upon Assessment Required.

(a) Each person sentenced by the court for a felony committed on or after the effective date of this Act shall be required, as part of any sentence to probation, community corrections, or incarceration with the Department of Corrections, to undergo periodic testing and treatment for substance abuse which is appropriate to such person based upon the recommendations of the assessment made pursuant to § 88.30 of this Act, or based upon any subsequent recommendations by the Department of Corrections or the Superior Court of Guam, whichever is appropriate. Any such testing or treatment shall be at such person's own expense, unless such person is indigent.

(b) Each person placed on **parole** by the Territorial **Parole Board** on or after the effective date of this act, shall be required, as a **condition** of such **parole**, to undergo periodic testing and treatment for substance abuse which is appropriate to such person based upon the recommendations of the assessment made pursuant to § 88.30 of this Act, or any assessment or subsequent reassessment made regarding such person during his incarceration or any period of **parole**. Any such testing or treatment shall be at such person's own expense, unless such person is indigent.

<General Materials (GM) - References, Annotations, or Tables>

9 G.C.A. § 88.35, GU ST T. 9, § 88.35

Current through P.L. 29-003 (2007)

Copr. © 2006. Government of Guam.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

GU ST T. 9, § 85.54

9 G.C.A. § 85.54

GUAM CODE ANNOTATED
TITLE 9. CRIMES AND CORRECTIONS.
CHAPTER 85. TERRITORIAL PAROLE BOARD
§ 85.54. Duties of Parole Officers.

The parole officer shall:

(a) be responsible for investigation, supervision and reports as may be requested by the Board;

(b) formulate methods of supervision, record keeping and reports;

(c) furnish to each person released under his supervision a written statement of the conditions of parole and instruct such person as to the same;

(d) keep informed of the conduct and condition of each person under his supervision and use all suitable methods to aid and encourage them and to bring about improvement in their conduct and condition;

(e) keep detailed records of his work.

<General Materials (GM) - References, Annotations, or Tables>

9 G.C.A. § 85.54, GU ST T. 9, § 85.54

Current through P.L. 29-003 (2007)

Copr. © 2006. Government of Guam.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.