LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GUAM

| UNITED STATES OF AMERICA, | ) CRIMINAL CASE NO. 04-00053 |
|---|---|
| Plaintiff, | ) |
| vs. | ) **UNITED STATES' MEMORANDUM CONCERNING STANDING AND PAROLE SEARCHES** |
| VINCE LUIS HOCOG CRUZ, | ) |
| Defendant. | ) |

## I. STANDING

Defendant initially filed a motion to suppress the evidence seized from "his" residence on October 10, 200. By stating that the apartment searched was "his" residence, he obviated the need to show he had standing to object to any searches or seizures that occurred there. He later withdrew that motion. Now, he has filed a renewed motion asking suppression of the fruits of the search of "Defendant's residence." He then asserts at page 6 of his brief that the apartment was not his residence. The affidavit filed by his wife states that he was merely present in her home as a visitor. Her declaration brings any consideration of this motion to a screeching halt, until the issue of standing is resolved.

Fourth Amendment rights are personal; they may not be "vicariously asserted." <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969). Defendant must establish prejudice to his own constitutional rights. He cannot establish prejudice "through the use of evidence gathered as a

consequence of a search and seizure directed at someone else ...." Id. at 174. Defendant has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. Simmons v. United States, 390 U.S. 377 (1968), dealt with the consequences of this requirement. There, the defendant wanted to suppress the seizure of a suitcase which FBI agents found in the basement of his mother's house, and which contained fruits of the bank robbery for which defendant was being prosecuted. To establish standing, he had to take the stand and testify that the suitcase was his. After the motion to suppress was denied, the government used his statement against him in trial. He appealed his conviction, contending that it was unfair, on one hand to require him to establish he had standing in a particular object, and on the other, to use his testimony against him later. The Supreme Court agreed and reversed his conviction. Defendant had a constitutional right to challenge the seizure of his suitcase. But if his pretrial testimony to establish standing could later be used against him at trial, he would be much less likely to assert this right. The defendant should not have to choose between his Fourth and Fifth Amendment rights. Accordingly, the Court held "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Id. at 395.

Rakas v. Illinois, 439 U.S. 128 (1978) is the controlling authority. Defendants had been passengers in a car which was being driven by its owner when the police stopped them on suspicion of armed robbery. A rifle and box of shells was seized, and they moved to suppress on the grounds the search of the vehicle was illegal. Although the government challenged his standing, Rakas did not assert a possessory interest in either the vehicle or the gun and shells. Rather he took the position that he should have standing to object to the seizure of evidence because it was going to be used against him.

The Court noted that the term "standing" really concerned "the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." Id. at 133. It held that it was proper to allow "only defendants whose Fourth Amendment rights have been violated to benefit"

- 2 -

from the exclusionary rule. If the person whose rights were violated is not a defendant to the action, he has other remedies, such as the recovery of damages for such a violation. Id. at 134.

The Court held that whether a defendant can challenged a search or seizure "requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Id. at 140. Put another way, "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Id. at 143. Accordingly, the Court held that the defendants' motions to suppress were properly denied, because they failed to assert a property or possessory interest in the automobile, or the rifle and shells. Mere presence in the car was not enough.

The persons whose rights were violated always have the remedy of suppression, if the government seeks to use the evidence seized against them, as Rakas noted at p. 134. For example, in Steagald v. United States, 451 U.S. 204 (1981), officers had an arrest warrant for the suspect, who was living at the residence of a third party. They entered the residence without a warrant, but failed to find the suspect. Instead, they seized cocaine in plain view and charged the third party resident. The Court held that the government should have had a search warrant, if it wanted to use the evidence against the resident.

As well, the person must have a lawful expectation of privacy. In United States v. Cunag, 371 F.3d 1060 (9th Cir. 2004), for example, the defendant had rented a hotel room with a stolen credit card. Defendant was arrested after detectives entered his hotel room and seized mail he had stolen. In the subsequent prosecution, he moved to suppress based on the highly questionable entry by the detectives. The court held he had failed to assert a legitimate expectation of privacy, citing Rakas. Although one who legitimately rents a hotel room has an expectation of privacy, one who acquires the room by fraud is not "lawfully" on the premises, and thus has no Fourth Amendment protection.

Here, before the court considers any other aspect of defendant's motions, he has the burden to establish that he had a legitimate expectation of privacy in Cruz' apartment. Mere presence is not enough. Given it appears he violated his conditions of parole by even being in her apartment

- 3 -

after the weekend, he will also have to establish his presence there was lawful.

Defendant's authority does not address this issue. The cases he cites, Motley v. Parks, 132 F.3d. 1072 (9th Cir. 2005), and Moore v. Vega, 371 F.3d 110 (2nd cir. 2004), illustrate the remedy Rakas referenced at p. 134, that the persons whose rights are violated have civil recourse: § 1983 civil rights lawsuits against the responsible government agencies. The discussions in these cases concern whether the officers being sued have qualified immunity: they must have acted reasonably, such as having probable cause to believe they have the right house before charging through the door. These cases have nothing to do with motions to suppress evidence.

## PAROLE SEARCH

Defendant challenges the right of the Guam Parole Board to require parolees to waive their Fourth Amendment rights as a condition of parole. He correctly notes that the Board's conditions of release do not predicate the search on a "reason to believe" the parolee has committed a crime. Instead, it authorizes a search for any reason, i.e., a "suspicionless" search. Samson v, California, 547 U.S. 843 (2006) appears directly on point. California law provided that any prisoner eligible for release on parole had to agree to be subject to search or seizure by the parole officer with or without a search warrant or cause. Cal.Penal Code Ann. § 3067(a) (West 2000). A police officer searched defendant without any cause, simply because he was on parole, and found methamphetamine. His motion to suppress was denied, and he ultimately appealed his conviction to the Supreme Court. The Court framed the question as:

> "whether a condition of release can so diminish or eliminate
> a released prisoner's reasonable expectation of privacy that
> a suspicionless search by a law enforcement officer would
> not offend the Fourth Amendment." Id. at 847.

The court applied the analysis of United States v. Knights, 534 U.S. 112 (2001), whether such a search was reasonable, i.e., weighing the degree of intrusion upon an individual's privacy against the degree such intrusion is needed to serve legitimate governmental concerns. Given that parole is a form of imprisonment, and given the high degree of recidivism among parolees, the court concluded that a suspicionless search was reasonable, and affirmed defendant's conviction.

- 4 -

The only difference between California and Guam is that Guam law does not specifically authorize the Parole Board to make a suspicionless search one of the conditions of parole. The question is whether this omission renders the imposition of such a condition unconstitutional. As he correctly notes, this issue has already been before the Ninth Circuit in <u>United States v. Rios</u>, 256 Fed.Appx. 945 (November 27, 2007), though regrettably the decision was not published. The court noted that 9 GCA § 80.80 gives the Parole Board the authority to impose "any other conditions reasonably related to his rehabilitation or to the public safety and security." Defendant does not argue that a waiver of rights is not reasonably related to the public's safety and security.

Applying the balancing test of <u>Knights</u>, the condition that defendant waive his Fourth Amendment rights was reasonable. Thus, parole officers did not need reasonable suspicion to search defendant's person or his residence.

## THE NEED FOR EVIDENTIARY HEARING

If defendant persists in his position that he was not living at Millie's apartment, he must produce evidence showing he had some expectation of privacy there.

If he establishes standing, there is no need for taking further evidence. The issue is whether the Guam Parole Board can, as a matter of law, make a suspicionless search a condition of parole. If it can, then it does not matter whether the parole officers had reason to believe defendant lived at the apartment (if not, Millie has a fine § 1983 action), or whether they had reason to believe he was engaged in criminal activity.

Respectfully submitted this 23rd day of May, 2008.

                                    LEONARDO M. RAPADAS
                                    United States Attorney
                                    Districts of Guam and CNMI

                            By:   /s/ Karon V. Johnson
                                 KARON V. JOHNSON
                                 Assistant U.S. Attorney